398 P.2d 112

Max RAPIER, Petitioner,

v.

SUPERIOR COURT OF GREENLEE COUNTY, Honorable Henry S. Stevens, Judge, and Herman Sanchez, Respondents.

No. 8585.

Supreme Court of Arizona.

En Banc.

Dec. 30, 1964.

Rehearing Denied Feb. 25, 1965.

Dudley S. Welker, Safford, for petitioner.

Peterson, Estrada, Matz & Machmer, by Frank Gabusi, Phoenix, for respondents.

UDALL, Chief Justice.

This is an original proceeding wherein Max Rapier, hereinafter called contestee, seeks a writ of prohibition against the Superior Court of Greenlee County from proceeding any further in a primary election contest brought by Herman Sanchez, hereinafter called the contestant. An alternative writ of prohibition issued from this Court on November 24, 1964 prohibiting the Greenlee County Superior Court from proceeding any further in the cause until further order of this Court.

Contestant was the incumbent County Assessor of Greenlee County. In the primary election held on September 8, 1964, contestee received the highest number of votes cast for that office thus becoming the Democratic nominee for County Assessor as certified by the Board of Supervisors after the official canvass of the election on September 14, 1964. Eight days later on September 22, 1964 contestant filed a Statement of Contest contesting the nomination of contestee alleging that illegal votes were cast and that there was an erroneous count of votes. Ten days later on October 2, 1964 contestee filed a motion to dismiss the contest and an answer. On October 13, 1964 contestee filed a motion for summary judgment based upon testimony made under oath by the contestant in his deposition taken October 5, 1964.

A hearing was held on all of the motions on October 13, 1964. At this time contestee raised the additional defense that absentee balloting had already begun and therefore the case was moot. The Court took the motions under advisement and made an order on October 26, 1964 denying contestee's motion to dismiss and motion for summary judgment. Some controversy then occurred over the matter of inspection of the ballots. On November 9, 1964, five days after the general election in which contestee was duly elected County Assessor of Greenlee County for the term of office beginning January 1, 1965, the Superior Court made an order respecting the inspection of the ballots and ordered that a trial date be set. On November 13, 1964 contestee petitioned this Court for a writ of prohibition to prevent the Superior

Court from proceeding further in the matter for the reason, *inter alia*, that the case was moot.

The authorities recognize that the final determination of a primary election contest must be completed in time to prepare the ballots for the general election, including the absentee ballots. See e. g., Sterling v. Ferguson, 122 Tex. 122, 53 S.W.2d 753 (Texas 1932); Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (Texas 1946); Hill v. Superior Court in and for Los Angeles County, 109 Cal.App. 91, 292 P. 662 (1930). These cases are illustrative of a long line of cases applying the above principle. If such were not the rule, all electors who voted in the general election for this particular office could be disfranchised.

In this case, the general election occurred on November 3, 1964. The absentee ballots for the general election would have to have been delivered not less than thirty days prior to the general election. A.R.S. § 16–1104 (1956). Thus the primary election contest in this case became moot after October 4, 1964, without taking into consideration a reasonable time for printing the ballots.

Contestant in opposition to the argument that the contest is moot cites Griffin v. Buzard, 86 Ariz. 166, 342 P.2d 201 (1959). In that case this Court said the holding of the general election would not operate to make the issues presented by the primary election contest moot. However, it should be noted that case involved an allegation of fraud and deception of the electorate. In the case at bar, the allegations of contest are of a different and much less serious nature. Here, the statement of contest was instituted because of alleged illegal votes and an erroneous count of votes; however, there are no allegations of fraud or deception nor does the deposition of the contestant claim that the contestee or any other person connected with the election committed a crime affecting the purity of the election.

■ In contestant's deposition he admits that he does not know of any particular elector who voted illegally nor was he able to designate any precinct in Greenlee county where illegal voting took place. Contestant frankly admits that he bases his claim to support the election contest on his suspicion that illegal voting took place and that there was an erroneous counting of votes on the part of undesignated election officers in undesignated precincts. We feel this is an important distinction between the present case and the Griffin v. Buzard case, supra. By the very nature of the election system, contests of the primary election such as presented by this case, must be settled in time for the electorate to exercise their voting franchise at the general election set by law. Sterling v. Ferguson (Texas 1932), supra; Polk v. Davidson (Texas 1946), supra; and Hill v. Superior Court in and

for Los Angeles County (1930), supra. Only fraud and deception of the voters, and acts that amount to crimes affecting the purity of an election alter the general rule that primary election contests are moot if not finally determined in time before the absentee balloting begins for the general election.

■ We therefore hold that the primary election contest in the case at bar is moot and should be dismissed, and the matter left in the same condition that would have existed had no contest been instituted.

We here deem it appropriate for this Court to call the attention of the Legislature to the condition of our statutes regarding contests of primary elections, and in so doing we will use this election year, 1964, as a standard. The primary election was held on September 8. According to law, the general election was held on November 3. Thus, there were fifty-six days between these two election dates. The statutes pertaining to absentee voting require the absentee ballots be prepared and delivered to the County Recorder not less than thirty days before the general election. A.R.S. § 16–1104(B) (1956). The thirty days taken from the fifty-six days above mentioned leaves only twenty-six days. The contest must be filed within twenty days after completion of the canvass of the election. In this case the canvass occurs six days after the election as required by law. A.R.S. § 16–981 (1956). Thus six more days are taken off leaving twenty days in which to institute and finally complete an election contest. If the contestant had used all the time available to him (twenty days) before filing the contest, it would have been moot when he filed it. A.R.S. § 16–1202 (1956). Assuming contestant files sooner as in this case, eight days after the canvass on September 22, the contestee is allowed by law ten days in which to answer. A.R.S. § 16–1203 (1956). In this case the contestee did use his full ten days before answering thus leaving two days (Saturday and Sunday) in which to have a trial, get a judgment, appeal, and obtain a final decision in order to have the absentee ballots prepared and ready that same day!

We call attention to the above conditions as they now exist in our primary election contest statutes to demonstrate that they are for all practical purposes inoperative. This is because primary election contests in most instances cannot be finally completed before the time absentee balloting begins in the subsequent general election. See Iles v. Walker, 132 Tex. 6, 120 S.W.2d 418 (Texas 1938) for a strikingly similar situation.

Alternative writ of prohibition made permanent.

LOCKWOOD, V. C. J., and STRUCKMEYER, BERNSTEIN and SCRUGGS, JJ., concurring.